UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

**STARLANITA THOMAS and
MARQUISIA MELTON,** individually, and
on behalf of others similarly situated,

      Plaintiffs,

**vs.**

**NETWORK HEALTH, INC.,** a Wisconsin
Corporation,

      Defendant.

Case No. 26-cv-1001

Hon.:

Mag.:

---

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND JURY DEMAND

Plaintiffs, STARLANITA THOMAS and MARQUISIA MELTON ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective/Class Action Complaint against Defendant NETWORK HEALTH, INC. ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Wisconsin Wage Payment and Collection Laws, Wis. Stat. § 109.01 *et seq.*, Wis. Stat. § 104.01 *et seq.*, Wis. Stat. § 103.001 *et seq.,* Wis. Admin. Code § DWD 274.01 *et seq.*, and Wis. Admin. Code § DWD 272.001 *et seq.* ("WWPCL").

2. Plaintiffs and all other similarly situated individuals work or worked remotely for Defendant as hourly, non-exempt Member Experience Representatives ("MERs") in the United

1

Case 1:26-cv-01001-BBC   Filed 06/04/26   Page 1 of 22   Document 1

States assisting its members with health insurance plans.

3. Pursuant to Defendant's company-wide policies and procedures, it failed to pay Plaintiffs, and other similarly situated employees, for all hours worked, including statutory mandated overtime for all hours worked over forty (40) hours in a single workweek. Specifically, Defendant's time rounding policy is implemented in a non-neutral fashion that results in MERs disproportionately losing time worked due to both unlawful time rounding and because it required the performance of compensable work before clocking into the computerized timekeeping system.

4. Defendant's systemic violations of federal wage laws and state common laws were willful.

5. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Classes, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective, and the Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

6. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

7. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

8. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

9. This is a class action in which the aggregate claims of the individual Class members

2

exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

10. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

11. Defendant's hourly, non-exempt employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

12. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14. This Court has personal jurisdiction over Defendant because it conducts business within the state of Wisconsin, has its principal place of business and headquarters in Menasha, Wisonsin, is registered with the Wisconsin Department of Financial Institutions and employs individuals within the state of Wisconsin.

15. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Wisconsin, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this District; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional

requirements of due process.

## VENUE

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

17. Plaintiff Starlanita Thomas ("Plaintiff Thomas") is a Wisconsin resident who has worked for Defendant as an hourly, non-exempt MER in Wisconsin within the last two years.

18. Defendant paid Plaintiff for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $19.11 per hour.

19. Plaintiff signed a consent to join this collective action lawsuit, which will be filed with the Court contemporaneously with this Complaint.

20. Plaintiff Marquisia Melton ("Plaintiff Melton") is a Wisconsin resident who has worked for Defendant as an hourly, non-exempt MER in Wisconsin within the last two years.

21. Defendant paid Plaintiff for her services in the form of an hourly wage, for all credited hours worked.

22. Plaintiff signed a consent to join this collective action lawsuit, which will be filed with the Court contemporaneously with this Complaint.

23. Defendant is a Wisconsin corporation (Entity ID # M085491) with its headquarters and principal place of business located at 1570 Midway Pl., Menasha, WI 54952.

24. Defendant offers health insurance plans to Wisconsin residents.[1]

---

[1] *See* https://networkhealth.com/index (last accessed 6/1/2026).

4

## GENERAL ALLEGATIONS

25.     Defendant employed Plaintiffs as a MER within the past two years.

26.     Plaintiffs and other similarly situated hourly employees accepted Defendant's offer of a fixed hourly rate for each hour worked in exchange for the performance of their job duties as MERs.

27.     Despite offering to pay Plaintiffs and the other similarly situated MERs at a fixed hourly rate for each hour worked, Defendant paid Plaintiffs and all other MERs pursuant to a quarter of an hour time rounding policy. Under this time rounding policy, Defendant rounded the MERs' time to the nearest quarter of an hour.

28.     At the same time, Defendant's uniform timekeeping policy prohibited all MERs (including Plaintiff) from clocking in more than five (5) minutes prior to the start of their scheduled shift.

29.     Additionally, Defendant's uniform attendance and schedule adherence policies required all MERs (including Plaintiff) to be call-ready at the start of their scheduled shift – meaning they needed to be prepared to field calls from Defendant's members/customers at the start of their scheduled shift.

30.     Consequently, if the MERs complied with Defendant's written policies, their time would routinely and systematically be rounded down. For example, if Plaintiffs clocked in for their scheduled 8:00AM shifts at 7:55AM, then they would lose five (5) minutes of time due to Defendant's time rounding policy. The next day, if Plaintiffs clocked in at 7:56 AM for their 8:00AM shifts, they would lose four (4) minutes of time due to Defendant's time rounding policy.

5

31.     In addition to the time lost due to rounding, Plaintiffs estimate that the cumbersome process of loading and logging into all of the computer systems that were required to be call ready at the start of her shift took, on most days, between fifteen (15) and twenty (20) minutes.

32.     To comply with Defendant's rigid timekeeping, attendance and adherence policies, Plaintiff and other MERs needed to begin booting up their computers off-the-clock and 15-20 minutes prior to their scheduled start time. Accordingly, not only do MERs lose several minutes due to Defendant's time rounding policy, but they lose additional compensable time because the daily computer bootup process needed to be completed prior to MERs' scheduled start time and typically took between 15-20 minutes.

33.     Next, Defendant required MERs (including Plaintiffs) to be call ready the moment their unpaid half hour lunch period ended.

34.     This required MERs to return to their computers several minutes prior to the end of their lunch period to log back into essential computer programs.

35.     Additionally, if Plaintiffs or the other MERs clocked in a few minutes prior to the end of their scheduled unpaid lunch, then that time was once again rounded away.

36.     Defendant's timekeeping, attendance, and scheduled adherence policies required additional off-the-clock work and disproportionately resulted in MERs losing time due to rounding.

37.     Finally, Defendant's timekeeping, attendance, and adherence policies prohibited MERs from clocking out prior to the end of their scheduled shift.

38.     Despite the fact MERs are routinely scheduled for a full forty hour work week, Defendant's policies also prohibit MERs from reporting unscheduled overtime without advanced approval from management.

6

39.     As a result, MERs clocked out a few minutes after the end of their shift, and under Defendant's time rounding policy, this consistently resulted in several minutes of pay being rounded away.

40.     Additionally, after clocking out of Defendant's computerized timekeeping system, the MERs were required to complete the computer log-off/shutdown process, which again occurred off-the-clock.

41.     Defendant's hourly/non-exempt employees like Plaintiffs must adhere to rigid schedules that require working at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

42.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and other members of the Collective/Class.

43.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's MERs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA).[2]

44.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2. "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*.

_____

[2] *See*, https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited 2/3/26).

45. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

46. As stated above, aside from the unpaid work Defendant required its MERs and other similarly situated employees to perform preparing their computers, when Plaintiffs and other members of the Collective/Class clock in or out within the permissible timeframe before/after their scheduled start/end time, it is Defendant's policy to "round" their time to the nearest quarter hour. The rounding policy is illustrated in Plaintiffs' paystubs, including the August 29, 2025 sample pay statement from Plaintiff Thomas provided below.



**network health**
1570 Midway Place
Menasha, WI 54952

| Pay Statement | |
| --- | --- |
| Period Start Date | 08/10/2025 |
| Period End Date | 08/23/2025 |
| Pay Date | 08/29/2025 |
| Document | 219654 |
| Net Pay | $1,297.87 |

**Pay Details**

STARLANITA THOMAS

USA

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| Employee Number | 2100622 | | Pay Group | NonExecutive | |
| SSN | XXX-XX-XXXX | | Location | Remote - Menasha | |
| Job | Member Experience Rep. I | | FunctionArea | OPS - Operations | |
| Pay Rate | $0.0000 | | Business Seg | 59120 - Member Experience | |
| Pay Frequency | Biweekly | | | | |

**Earnings**

| Pay Type | Week | Job | Hours | Pay Rate | Current | YTD |
| --- | --- | --- | --- | --- | --- | --- |
| 3rd Party Sick | | | 0.000000 | $0.0000 | $0.00 | $1,343.57 |
| Bereavement | | | 0.000000 | $0.0000 | $0.00 | $301.32 |
| Bonus | | | 0.000000 | $0.0000 | $0.00 | $2,357.83 |
| Coefficient OT | 2 | Member Experience Rep. I | 0.750000 | $9.5554 | $7.17 | $28.47 |
| Floating Hol | | | 0.000000 | $0.0000 | $0.00 | $152.89 |
| FMLA PTO | | | 0.000000 | $0.0000 | $0.00 | $385.85 |
| Holiday | | | 0.000000 | $0.0000 | $0.00 | $751.08 |
| NH Waiver Incen | | | 0.000000 | $0.0000 | $0.00 | $800.00 |
| OT Lookback | | | 0.000000 | $0.0000 | $0.00 | $4.66 |
| Overtime | 2 | Member Experience Rep. I | 0.750000 | $19.1108 | $14.33 | $56.91 |
| Paid Time Off | | | 0.000000 | $0.0000 | $0.00 | $640.04 |
| PTO Supp | | | 0.000000 | $0.0000 | $0.00 | $5.20 |
| PTO Unscheduled | | | 0.000000 | $0.0000 | $0.00 | $379.05 |
| Regular Pay | 1 | Member Experience Rep. I | 40.000000 | $19.1108 | $764.43 | |
| Regular Pay | 2 | Member Experience Rep. I | 40.000000 | $19.1108 | $764.43 | $20,680.29 |

Total Hours 80.750000

47. As reflected in Plaintiff Thomas's pay statement above, she was credited with working 80 hours of straight time and 0.75 hours of overtime. However, the time reported on her pay statement does not include the time unlawfully rounded away or the additional time spent working off the clock loading and logging into essential computer systems.

48. The U.S. Department of Labor adopted a regulation that generally allows rounding practices. However, Defendant's rounding policy does not qualify as a permissible rounding policy under the FLSA. *See* 29 C.F.R. § 785.48(b).

49. The regulation provides that such rounding practice will be accepted, "provided it is used in such a manner that will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id*.

50. If an employer's rounding practice is not implemented in a manner that permits both upward and downward rounding, then the system is not neutral and will result, over a period of time, in a failure to compensate employees properly for all the time they have actually worked.

51. In this case, as a matter of both policy and universal practice, MERs are prohibited from clocking in more than five minutes before the start of their scheduled shift. At the same time, Defendant also required them to be call-ready at the start of their scheduled shift.

52. Similarly, MERs are not allowed to clock out early or more than seven minutes after the end of their scheduled shift without risk of discipline.

53. And finally, Defendant expected MERs to be call-ready the moment their scheduled lunches ended, which required them to return from lunch a few minutes early to log back into any of the essential work programs that they logged off of prior to lunch or were automatically logged out of prior to lunch.

9

54. The practice of rounding against the employee is a regular practice, enshrined in company policy rather than a rare or random event.

55. The way Defendant implements its rounding policy, when combined with Defendant's other workplace policies, favors the Defendant disproportionally. Thus, Defendant's time rounding policy is unlawful.

56. Additionally, in order to perform their job duties, MERs were required to engage in a cumbersome computer bootup process that took, on average, between 15-20 minutes before every shift. This computer bootup process occurred off-the-clock and entailed opening programs that were integral and indispensable to the performance of the MERs' job duties. They could not perform their job duties without completing this process.

57. More specifically, at the start of each shift, Plaintiffs and other MERs were required to perform the following bootup work tasks among others: turn on their computers; wait for Windows to load and log-in with a username and password; perform a dual-factor authentication process and connect to the VPN; log into MyQNxt and QNxt (house member and provider info); open their Call Log; open Microsoft Teams; open Microsoft Outlook and check emails for important updates and instructions; log-into Avaya (the phone system); log-into UKG (the timekeeping system).

58. Accordingly, in addition to the time lost due to Defendant's time rounding policy, MERs lost additional time at the beginning of their shift, in the middle of their shift (when returning from lunch), and at the end of their shift because they were required to log into or out of computer programs that were essential, integral, and indispensable to their job duties.

59.     Defendant knew or should have known that MERs were performing this off-the-clock work every day because Defendant put in place the uniform policies, procedures, and systems that required the off-the-clock work.

## FLSA COLLECTIVE ACTION DEFINITION AND ALLEGATIONS

60.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> **all hourly Member Experience Representatives (MERs) who work or worked remotely for Defendant at any time during the applicable statute of limitations up through and including judgment and who were subject to Defendant's time rounding policy.**

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

61.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated employees.

62.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

63.     Defendant assigned and/or was aware of all the work that Plaintiffs and the members of the FLSA Collective performed.

64.     Defendant implemented and enforced an unlawful time-rounding policy, as explained herein.

65.     Upon information and belief, Defendant is applying the same unlawful compensation policies to all similarly situated employees.

66.     As part of its regular business practices, Defendant intentionally, willfully and

11

repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

    b.    Willfully implementing and enforcing an unlawful (non-neutral) time rounding system;

    c.    Willfully instructing Plaintiffs and the members of the FLSA Collective to perform work off-the-clock; and

    d.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

67. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

68. Defendant's unlawful conduct has been widespread, repeated, and consistent.

69. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

70. The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan (including Defendant's time-rounding policy); and (d) their claims are based upon the same factual and legal theories.

71. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

12

72.     The key issue – the amount of uncompensated off the clock work owed to each employee – does not vary substantially among the proposed FLSA Collective members.

73.     Many similarly situated current and former members of the FLSA Collective have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

74.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

75.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

76.     Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

77.     The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 WISCONSIN CLASS ACTION ALLEGATIONS**

78.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> **all hourly Member Experience Representatives (MERs) who work or worked remotely for Defendant in Wisconsin at any time during the applicable statute of limitations up through and including judgment and who were subject to Defendant's time rounding policy.**

(hereinafter referred to as the "Rule 23 Wisconsin Class"). Plaintiffs reserve the right to amend this definition as necessary.

79.     The members of the Rule 23 Wisconsin Class are so numerous that joinder of all Rule 23 Wisconsin Class members in this case would be impractical. Plaintiffs reasonably

13

estimate there are hundreds of Rule 23 Wisconsin Class members. Rule 23 Wisconsin Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

80. There is a well-defined community of interest among Rule 23 Wisconsin Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Wisconsin Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether Defendant's time rounding policy was neutral and implemented in a neutral manner;

    b. Whether Defendant's time rounding policy violated the Wisconsin Wage Payment and Collection Laws cited herein;

    c. Whether the pre-shift time Rule 23 Wisconsin Class members spent on computer bootup tasks before clocking in for each shift was compensable;

    d. Whether the time that Rule 23 Wisconsin Class members spent on work activities during their lunch break, such as logging back into the computer systems and clocking in is compensable;

    e. Whether the post-shift time Rule 23 Wisconsin Class members spent logging out of essential programs and shutting down their computers is compensable; and

    f. Whether Defendant failed to pay each Rule 23 Wisconsin Class member all wages required by law.

81. Plaintiff's claims are typical of those of the Rule 23 Wisconsin Class in that she and all other Rule 23 Wisconsin Class members suffered damages as a direct and proximate result of the Defendant's common and systemic timekeeping and payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Wisconsin Class members' claims and her legal theories are based on the same

14

legal theories as all other Rule 23 Wisconsin Class members.

82.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Wisconsin Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Wisconsin Class.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Wisconsin Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Wisconsin Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

84.     This case will be manageable as a Rule 23 Wisconsin Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

85.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

86.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Wisconsin Class and declaratory relief is appropriate in this case with respect to the Rule 23 Wisconsin Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### <u>Violation of the FLSA Overtime Provisions</u>

87.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

88.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

89.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

90.     Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

91.     Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

92.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

93.     At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform *no less* than fifteen (15) to twenty (20) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

94.     Defendant uniformly implemented its time rounding policy in a non-neutral manner to the detriment of Plaintiffs and the FLSA collective.

95.     In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should

16

have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

96. Defendant's violations of the FLSA were knowing and willful.

97. Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for all work activities, but did not.

98. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Wisconsin Class Action)**
**Violations of the Wisconsin Wage Payment and Collection Laws**

99. Plaintiffs re-allege and incorporate all previous paragraphs herein.

100. Plaintiffs assert these claims on behalf of themselves and the Rule 23 Wisconsin Class.

101. At all relevant times, Plaintiff and the Wisconsin Class were employees of Defendant within the meaning of Wis. Stat. §§ 109.01(1r), 103.001(5), and 104.01(2)(a).

102. At all relevant times, Defendant was an employer of Plaintiffs and the Rule 23 Wisconsin Class within the meaning of Wis. Stat. §§ 109.01(2), 103.001(6), and 104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

103. At all relevant times, Defendant employed, and continue to employ, Plaintiffs and the Rule 23 Wisconsin Class within the meaning of Wis. Stat. §§ 109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01

104. Throughout the Wisconsin Class Period, Plaintiffs and the Wisconsin Class regularly performed activities that were an integral and indispensable part of their principal

17

activities without receiving compensation for these activities.

105.    At all relevant times, Defendant had common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing to properly pay Plaintiff and the Wisconsin Class regular wages and overtime compensation.

106.    Throughout the Wisconsin Class Period, Defendant maintained and perpetrated an unlawful compensation practice that shaved time (through its time rounding and adherence policies) from Plaintiffs' and the Rule 23 Wisconsin Class members pay for all pre-shift, mid-shift and post-shift work as more fully described herein, and in violation of the WWPCL.

107.    Defendant willfully failed to pay Plaintiff and the Wisconsin Class overtime premium compensation for all hours worked in excess of forty (40) hours a workweek, in violation of the WWPCL.

108.    As set forth above, Plaintiff and the Wisconsin Class members have sustained losses in their compensation as a proximate result of Defendant's violations. Accordingly, Plaintiff and the Wisconsin Class seek damages in the amount of their respective unpaid compensation, injunctive relief requiring Defendant to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Plaintiff and the Wisconsin Class may be entitled to liquidated damages and up to fifty percent (50%) of the unpaid wages.

109.    Plaintiff and the Wisconsin Class seek recovery of attorneys' fees and the costs of this action to be paid by Defendant pursuant to the WWPCL.

**COUNT III**
**(Rule 23 Wisconsin Class Action)**
**Violations of the Wisconsin Wage Payment and Collection Laws (Unpaid Regular**
**Wages/Failure to Pay an Agreed-Upon Wage)**

18

110. Plaintiffs re-allege and incorporate all previous paragraphs herein.

111. At all relevant times, Plaintiffs and the Rule 23 Wisconsin Class were employees of Defendant within the meaning of Wis. Stat. §§ 109.01(1r), 103.001(5), and 104.01(2)(a).

112. At all relevant times, Defendant was an employer of Plaintiffs and the Rule 23 Wisconsin Class within the meaning of Wis. Stat. §§ 109.01(2), 103.001(6), and 104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

113. At all relevant times, Defendant employed, and continues to employ, Plaintiffs and the Rule 23 Wisconsin Class within the meaning of Wis. Stat. §§ 109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01.

114. Throughout the Wisconsin Class Period, Plaintiffs and the Wisconsin Class regularly performed activities that were an integral and indispensable part of their principal activities without receiving compensation for these activities.

115. At all relevant times, Defendant had common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing to properly pay Plaintiffs and the Rule 23 Wisconsin Class regular wages and overtime compensation.

116. Throughout the Wisconsin Class Period, the Rule 23 Wisconsin Class was entitled to payments from Defendant at their agreed upon wage, as defined in Wis. Stat. § 109.01(3), for each hour worked, pursuant to Wis. Stat. § 109.03.

117. Throughout the Wisconsin Class Period, Defendant did not compensate the Wisconsin Class for each and every hour worked, in accordance with Wis. Admin. Code § DWD 272.

118. Throughout the Wisconsin Class Period, Defendant maintained and perpetrated an unlawful compensation practice (including but not limited to its rounding policy) that shaved time

19

from Plaintiffs' and the Rule 23 Wisconsin Class members' timesheets for all pre-shift and post-shift hours worked and/or work performed each work day and each workweek, resulting in Defendant impermissibly and unlawfully failing to compensate Plaintiffs and the Wisconsin Class for any and all hours worked and/or work performed each work day and each workweek at their regular hourly rate of pay when hours worked each workweek did not exceed forty (40), in violation of the WWPCL.

119. Defendant willfully failed to pay Plaintiffs and the Rule 23 Wisconsin Class compensation for all hours worked that did not exceed forty (40) hours in a workweek, in violation of the WWPCL.

120. As set forth above, Plaintiffs and the Wisconsin Class members have sustained losses in their compensation as a proximate result of Defendant's violations. Accordingly, Plaintiffs and the Wisconsin Class seek damages in the amount of their respective unpaid compensation, injunctive relief requiring Defendant to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Plaintiff and the Wisconsin Class may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages

121. Plaintiffs and the Rule 23 Wisconsin Class seek recovery of attorneys' fees and the costs of this action to be paid by Defendant pursuant to the WWPCL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective and on behalf of the Rule 23 Wisconsin Class requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b)

20

with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Wisconsin Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts II- III);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the Rule 23 Wisconsin Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective/Class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 Wisconsin Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f. Declaring Defendant's violation of the FLSA was willful;

g. Declaring Defendant violated the WWPCL as cited herein;

h. Declaring Defendant's violation of the WWPCL was willful;

i. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 Wisconsin Class the full amount of damages and liquidated damages available by law;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

k. Awarding other pre- and post-judgment interest to Plaintiff, the FLSA Collective and the Rule 23 Wisconsin Class on these damages; and

l. Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

21

Dated: June 4, 2026                    Respectfully Submitted,

**ASH LAW, PLLC**

*/s/Charles R. Ash, IV*
Charles R. Ash, IV (*Admitted*)
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*